**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

REGINALD JONES,                        *

      Plaintiff                        *

v.                                                    *        CIVIL NO. RWT-09-2904

HSBC BANK, USA, N.A, et al.,        *

      Defendants                    *

   *    *    *    *    *    *    *    *    *    *    *

<u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

     Defendants, HSBC Bank, USA, N.A. ("HSBC"), Home Equity Loan Trust ACE-2005-HES (the "Trust"), Wells Fargo Bank, N.A. ("Wells Fargo"), Buonassissi, Henning & Lash, P.C. ("BHL"), and Mortgage Electronic Registration Systems, Inc. ("MERS'), by their undersigned attorneys, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby file this Memorandum in Support of Defendant's Motion to Dismiss filed simultaneously herewith. For the reasons set forth more fully below, the Motion should be granted.

<u>THE PARTIES</u>

     In 2005, the Plaintiff entered into a new Promissory Note and Deed of Trust ("DOT") to refinance his property. In that loan transaction, the "Lender" was Fremont Reorganizing Corporation, the "Trustee" was Friedman & MacFayden, and the beneficiary of the DOT was MERS. Shortly after the loan was made, it was assigned to Wells Fargo for servicing and remained with Wells Fargo until and throughout this litigation. Fremont sold the Note and DOT in the secondary market to the Trust and HSBC was appointed as successor Trustee.

1

Acting as attorney-in-fact for HSBC and the Trust, Wells Fargo filed a Deed of Appointment of Substitute Trustee in the land records for Montgomery County naming BHL as Substitute Trustee.  BHL then filed the underlying foreclosure action (discussed herein below) against the Plaintiff after a default in repaying the amount due under the Note.  The Plaintiff originally joined Fremont Reorganization Corporation and Friedman & MacFayden in the litigation; however, these parties were later dismissed by stipulation.   Thus, the remaining parties to the present action are MERS, Wells Fargo, HSBC, the Trust, and BHL.

BACKGROUND

This litigation was commenced on or about October 6, 2009 with the filing of a civil Complaint in the Circuit Court of Maryland for Montgomery County.  The Defendants then timely removed the case to this Court on or about November 2, 2009.    The central focus of the Complaint appears to be the novel belief that the sale and securitization of mortgage loans in the secondary market somehow "splits" the DOT from the mortgage Note and "extinguishes" the lender's security interest.  Complaint at ¶ 26.  As the Plaintiff sees it, this "split" effectively negates any authority HSBC or its substitute trustees may have had to enforce and act upon its lien against his former property.

It is worthy of note that a related foreclosure proceeding exists in the Circuit Court of Maryland for Montgomery County, styled *Buonassissi, et al. v. Jones* (Case No. 316757-V), which was commenced on July 10, 2009.  In that case, the Circuit Court entered its final Order ratifying the foreclosure sale on March 2, 2010.  A copy of that Order is attached hereto as

Exhibit A.[1]  On May 14, 2010, the Circuit Court awarded possession of the Plaintiff's property to HSBC.  A copy of that Order is attached hereto as Exhibit B.

In his Motion for Preliminary Injunction and/or Temporary Restraining Order ("Plaintiff's TRO Motion"), the Plaintiff acknowledged the state foreclosure action as well as the May 14, 2010 Order therein which awarded possession of his former property to HSBC.  Having opposed the ratification of the foreclosure sale and the award of possession to HSBC in the foreclosure proceedings, but failing in his efforts there, the Plaintiff now comes to this Court to enjoin and "prevent possession of the property by Defendants."  Plaintiff's TRO Motion at 7.  However, for the reasons set forth more fully below, this Court should dismiss the Plaintiff's Complaint in its entirety.

<u>ARGUMENT</u>

Recent holdings of the U.S. Supreme Court have created a heightened pleading standard in the federal courts.  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Although all factual allegations are accepted as true for the purpose of a Rule 12(b)(6) motion to dismiss, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S.Ct. at 1949.  A pleading does not meet the standard "if it tenders 'naked assertions' devoid of 'further factual enhancements.'"  *Id*.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id*.

---

[1]  Pleadings from the foreclosure case can be appended as exhibits and considered by the Court without converting this Motion to a motion for summary judgment.  A reviewing court may freely consider documents that are either central to the plaintiff's claim or sufficiently referenced in the complaint in the context of a Rule 12(b)(6) motion.  *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999); *Gasner v. Dinwiddie County*, 162 F.R.D. 280 (E.D. Va. 1995).

With that pleading standard in mind, a motion to dismiss under Rule 12(b)(6) tests the sufficiency of the Complaint and raises the question of whether all well-pled facts support a valid claim for relief. *Republican Party of N.C. v. Martin*, 980 F.2d 943 (4th Cir. 1992). In this case, taking all well-pled facts and the inferences derived therefrom in favor of the Plaintiff, he nonetheless has failed to state a cognizable claim that entitles him to relief.

I.     THE PLAINTIFF'S COMPLAINT IS BARRED BY THE DOCTRINE OF *RES JUDICATA*.

In the related state foreclosure action, the Plaintiff's motion for injunctive relief was denied as moot following a hearing. *See* Order dated July 1, 2010, a copy of which is attached hereto as Exhibit C. Furthermore, his objections to the foreclosure sale and the awarding of the property to HSBC were expressly overruled. *See generally* Exhibit D (copy of foreclosure action docket). Thus, the Plaintiff has had an opportunity to be heard in state court on the same claims he has raised in this case. For that reason, the Court should dismiss this action on the basis of *res judicata*.

While *res judicata* typically is raised in a pleading under Federal Rule 8(c), the Fourth Circuit has upheld the assertion in a motion to dismiss. "Although an affirmative defense such as *res judicata* may be raised under Rule 12(b)(6) only if it clearly appears on the face of the complaint, when entertaining a motion to dismiss on the ground of *res judicata*, a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* raises no disputed issue of fact." *Gerald S. DeCosta, et al. v. U.S. Bancorp, et al.*, 2010 WL 3824224 at *8 (D. Md., Sept. 27, 2010) (citing *Andrews v. Daw*, 201 F.3d 521, 524 (4th Cir. 2000)).

In *DeCosta*, the procedural posture is similar to that which is presented here. The defendants instituted a foreclosure action after the plaintiffs stopped making their mortgage payments. The plaintiffs filed a complaint in the United States District Court alleging violations

of the federal Fair Debt Collection Practices Act, federal Truth-In-Lending Act, and Maryland Consumer Protection Act. The plaintiffs asserted that these violations arose out of a failure to accept their putative rescission letter that was issued more than three years after the refinancing of their home mortgage loan.

The defendants filed a motion to dismiss based, in part, on *res judicata*. They argued that the plaintiffs' claims were barred on the grounds that their complaint raised the same issues in the U.S. District Court as did their ill-fated motion to dismiss in the state foreclosure action. The court dismissed the complaint, holding that the plaintiffs were barred from raising the same claims that had been previously adjudicated in the state foreclosure action.

As in *DeCosta*, the applicable form of *res judicata* in this case is issue preclusion. Issue preclusion requires that four elements be met: (1) the issue decided in the prior adjudication must be identical with the one presented in the instant action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted is a party or is in privity with a party to the prior adjudication; and (4) the party against whom the plea is asserted was given a fair opportunity to be heard on the issue. *Culver v. Md. Ins. Comm'r*, 175 Md. App. 645, 657 (2007).

The first element is satisfied here as the Plaintiff filed identical motions for injunctive relief in both cases in an attempt to stall the foreclosure. The second element requires that there be a final judgment in the prior suit. In the foreclosure action, the Circuit Court ratified the foreclosure sale, deemed the request for injunction moot, and awarded possession to the foreclosure sale purchaser. The *DeCosta* court discussed the finality element with respect to foreclosure actions, stating that:

> Proceedings to foreclose on a lien under a power of sale may be commenced in Maryland by the filing of an order to docket. *See* Md. Rule 14-207. In the typical case, "[f]oreclosure pursuant to a power of sale is intended to be a summary, in rem proceeding.

5

> *G.E. Cap. Mortg. Servs., Inc. v. Levenson*, 338 Md. 227, 245
> (1995).  The nature of the action may change, however, when the
> mortgagor voluntarily appears.  *Fairfax Sav., F.S.B. v. Kris Jen
> Ltd.P'ship*, 338 Md. 1, 16-17 (1995).   When the borrower gets
> involved, as Plaintiffs did here by filing a motion to dismiss, the
> court may including "rulings … that have *in personam* collateral
> estoppel effect."  *Id.* at 17.   Therefore, in resolving a motion to
> dismiss an order to docket, the court may make the type of "final
> determination" necessary to invoke issue preclusion.  *Cook v.
> State*, 281 Md. 665, 669 (Md. 1978).  Indeed, the Maryland Rules
> specifically contemplate that the court will make a "final
> determination" on such a motion.  Md. Rule 14-211(c).   That
> ruling is appealable.  *See Andrulonis v. Andrulonis*, 193 Md. App.
> 601, 616 (2010) (looking to "the appealability of [the court's]
> determination by the party against whom the issue preclusion is
> being asserted" to determine a judgment's preclusive effect).   In
> light of all these considerations, it would appear that the issue of
> the validity of Plaintiffs' rescission claim has already been
> resolved in another action ending in a final judgment.

*DeCosta*¸ 2010 WL 3824224 at \*7.   As in *DeCosta*, a final judgment was entered on the merits here in the state foreclosure proceeding.

The third element also is satisfied in that the Plaintiff himself was a party to and participated in the foreclosure action.  As to the fourth element, the Circuit Court made its rulings after considering motions and objections filed by the Plaintiff through his attorney, Mr. Blanco, who also represents him here.  Thus, the Plaintiff certainly had a fair opportunity to be heard on the issues.  Accordingly, the Plaintiff should not be allowed to relitigate these issues and the Complaint should be dismissed.

## II.   THE PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF IS BARRED BY THE ANTI-INJUNCTION ACT.

In this case, the Plaintiff must acknowledge the final Orders in the Circuit Court for Montgomery County that ratify the foreclosure and award possession of his former property to HSBC.  Yet, he now seeks an injunction from this Court barring enforcement of those Orders. Such an injunction is expressly prohibited by federal law.

6

The Anti-Injunction Act provides succinctly: "A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. This statute "has helped to define our nation's system of federalism" and a court should not enlarge the scope of these exceptions "by loose statutory construction." *Employers Res. Mgmt. Co., Inc. v. Shannon*, 65 F.3d 1126, 1130 (4th Cir. 1995).

In *Warriner v. Fink*, 307 F.2d 933 (5th Cir. 1962), the plaintiff sought a decree in federal court that a state foreclosure judgment be declared null and void, and enforcement of that judgment enjoined. The Fifth Circuit there held that "the federal district court had no jurisdiction to enjoin the enforcement of, or to set aside, or to hold null and void the decree of foreclosure entered by the Circuit Court of Monroe County, Florida" because of the prohibition contained in the federal Anti-Injunction Act. 307 F.2d at 936. A similar result should follow in this case.

III.     THE PLAINTIFF'S COMPLAINT IS BARRED BY THE ROOKER-FELDMAN DOCTRINE.

Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by *writ of certiorari*. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). Under this principle, generally referred to as the *Rooker-Feldman* doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court. *Johnson v. DeGrandy*, 512 U.S. 997 (1994).

In *Turner v. Eastern Savings Bank*, 2010 WL 1409858 (D. Md. April 2, 2010), the plaintiff sought injunctive relief to stop the lender's post-foreclosure possession of property. This court denied the plaintiff's requested relief, finding that "the *Rooker-Feldman* doctrine prohibits

the court from reviewing the state court action." 2010 WL 1409858 at *3. For the same reason, the Plaintiff's Motion for Injunctive Relief should be denied in this case.

IV.    THE PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

**A.   The Plaintiff Is Not Entitled To A Declaratory Judgment**

Declaratory judgment is a remedy available in a civil action under which the court "may declare the rights and other legal relations of an interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §2201. However, the Plaintiff is not entitled to such a declaration in this case.

A number of the Plaintiff's claims arise out of his misconception that when his Note was sold, the sale or transfer extinguished his obligation to make any further payments. Alternatively, the Plaintiff argues that the sale or transfer of the Note "split" the obligation from the Deed of Trust and transformed the Note into an unsecured debt. Complaint ¶ 60-61. Relying on these beliefs, the Plaintiff seeks a judgment declaring that: "[a]s a result of the securitization process to which the Promissory Note has been subjected, the Defendants have no legal or equitable interest in the Property, have no standing or injury to establish standing, have no privity of contract with the Plaintiff, and have no authority to enforce the security and/or Promissory Note." Complaint ¶¶ 62-65.

However, the Plaintiff references nothing in the loan documents that remotely indicates an extinguishment of enforcement rights by the Note holder in the event the mortgage Note is sold. In fact, the opposite is true. "Borrower shall not be relieved from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind… and benefit the successors and

8

assigns of Lender." *See* Exhibit E, DOT, § 13.  The latter clause above effectively rebuts every misconception the Plaintiff seeks to advance here.

Further, under § 20 of the DOT, "[i]f the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser." *Id*. at § 20.  This provision clarifies to whom the Borrower owes his payment obligation and does not act to extinguish any rights.  Rather, it makes clear that following a sale, if the purchaser of the Note assigns the servicing of the loan to an entity other than the purchaser, that servicer is owed the loan obligations (*e.g.* monthly payments) rather than the Note purchaser.  Importantly, neither the sale of the Note nor the assignment of servicing rights impacts the validity of the recorded lien.

Further, the Note and the DOT each reference the other.  For example, "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold …."  Exhibit E § 20.  The consistently expressed intent throughout the loan documents is to keep the two instruments joined together, and never split apart.

Under the terms of the DOT, Wells Fargo and BHL had legal standing to initiate and prosecute a foreclosure action related to a defaulted loan.  As discussed above, the Circuit Court in the foreclosure action not only addressed the issues being raised herein, but also concluded that HSBC and the Trust now have legal title to the subject property.  Flowing from the rights arising out of the DOT and the Note, the Defendants had both authority and standing to institute an action to enforce the Note holder's security interest.

For all of these reasons, the Plaintiff is not entitled to any declaratory relief.

**B.  The Plaintiff Is Not Entitled To Relief Under The Fair Debt Collection Practices Act**

The Plaintiff alleges that Wells Fargo, HSBC, the Trust, and BHL violated the FDCPA. Complaint ¶¶ 59-61.  However, that statute applies only to "debt collectors."

> The term "debt collector" means any person … in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.
>
> …
>
> The term does not include – … (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity … (ii) concerns a debt which was originated by that person; (iii) concerns a debt which was not in default at the time it was obtained by such person.

15 U.S.C. § 1692a(6).  The legislative history of this section "indicates conclusively that a debt collector does not include *the consumer's creditors, a mortgage servicing company, or an assignee of a debt,* as long as the debt was not in default at the time it was assigned."  *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (emphasis added).  *See also Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003)(same); *Fischer v. UNIPAC Service Corp.*, 519 N.W. 2d 793 (Iowa 1994).

In this case, the Plaintiff has failed to allege that any of the Defendants are "debt collectors" as that term is defined in the statute.  Wells Fargo is a mortgage loan servicer, not principally engaged in the collection of debts.  Thus, it cannot be a "debt collector" under the FDCPA.  Further, the Trust (and its Trustee, HSBC) were bona fide assignees of the debt.   Even if the Plaintiff could establish Wells Fargo, HSBC, or the Trust as "debt collectors", he has not alleged the statutory requirement that the mortgage loan at issue be in default at the time it was assigned.

### C.  The Plaintiff Is Not Entitled To Quiet Title Or Injunctive Relief

An action to quiet title is one in which the "primary relief [is] removing any cloud from the plaintiff's title." *Dept. of Natural Res. V. Welsh*, 308 Md. 54, 521 A.2d 313 (1986).   The Plaintiff must also demonstrate that his claim to the land is superior to any other claim.  *Porter v. Schaffer*, 126 Md. App. 237, 728 A.2d 755 (1999).   Here, the Plaintiff cannot demonstrate that his claim is superior to that of HSBC on behalf of the Trust.  In fact, on May 14, 2010, in the foreclosure action pending in the Circuit Court for Montgomery County, a judgment awarding possession to HSBC was entered.  *See* Exhibit B.  Thus, the Plaintiff has not stated a claim for quiet title upon which relief can be granted.

### D.  The Defendants Did Not Owe A Fiduciary Duty To The Plaintiff

The Plaintiff alleges that BHL "owed the duties of impartiality and the ordinary care of a fiduciary to the Plaintiff."  Complaint ¶ 67.  On the contrary, BHL was retained *by Wells Fargo* to conduct foreclosure proceedings following the mortgage loan default.  BHL had no relationship at all with the Plaintiff.  Further, the Plaintiff and the other Defendants had only a debtor-creditor relationship.  This is an arms-length relationship from which no special duty or obligation of trust arises.

In *Parker v. Columbia Bank*, 91 Md. App 346, 352, 604 A.2d. 521, 524 (1992), the plaintiffs contracted with a builder to build a custom home.  They approached Columbia Bank and its representative for a construction loan and were approved.  91 Md. App. at 354, 604 A.2d at 525.  The plaintiffs and Columbia Bank agreed that the bank would complete certain tasks under the loan agreement including the issuance of periodic construction draws payable to both the homeowner and the builder.  *Id.*  At some point in the project, the plaintiffs determined that

80% of the loan was paid out, but actual construction was only 40% complete.  91 Md. App. at

357, 604 A.2d at 526.

   The plaintiffs then stopped making the monthly payments on the construction loan after

receiving a notice of intent to file a mechanic's lien from one of the builder's subcontractors.  91

Md. App. at 358, 604 A.2d at 527.   The plaintiffs also learned there was a substantial sum owing

to complete the project as originally designed and to build the road required by the county.  *Id.*

Columbia Bank issued a notice of intent to foreclose and the plaintiffs filed a complaint alleging

fraud, fraudulent concealment, negligence, negligent misrepresentation, breach of fiduciary duty,

civil conspiracy, fraud in the inducement, and breach of contract.  *Id.*

   In dismissing the tort claims, the court held that there was no fiduciary or heightened duty

owing to the homeowners from the bank.   Maryland courts have long recognized the principle

that:

> …the relationship of a bank to its customer in a loan transaction is
> ordinarily a contractual relationship between a debtor and a
> creditor, and it is not fiduciary in nature…. Courts have been
> exceedingly reluctant to find special circumstances to transform an
> ordinary contractual relationship between a bank and its customer
> into a fiduciary relationship or to impose any duties on the bank
> not found in the loan agreement.

91 Md. App at 368-69, 604 A.2d at 532 (citations omitted); *Yousek v. Trustbank Sav. F.S.B.*, 81

Md. App. 527, 568 A.2d 1134(1990)(holding that a lender owed no heightened duty to

commercial borrowers to review and assess the validity and enforceability of leases for the

subject property); *see also, Denison State Bank v. Maderia*, 640 P.2d 1235, 1243-44 (Kan. 1982)

(refusing to find a fiduciary relationship even where the lender knows the customer is relying on

the bank for advice because a "borrower cannot abandon all caution and responsibility for his

own protection and unilaterally impose a fiduciary relationship on another without a conscious

assumption of such duties by the one sought to be held liable as a fiduciary").

The instant case requires even less scrutiny of the relationship between the lender and the

borrower than was applied in *Parker*.  The Plaintiff here signed a standard Deed of Trust and

Note.  There were no additional duties or tasks assumed by the lender.  The relationship was

purely contractual.  As such, there is certainly no relationship or nexus giving rise to a special

duty from BHL to the Plaintiff.  Accordingly, the Plaintiff's claim for breach of fiduciary duty

should be dismissed.

### E.  The Defendants Did Not Commit Fraud

For the Plaintiff to prove a claim for fraud against the Defendants, "he must show: (1) that

the [D]efendant[s] made a false representation; (2) that its falsity was either known to the

[D]efendant[s], or the misrepresentation was made with such reckless indifference to the truth as

to  be equivalent to actual knowledge; (3) that it was made for the purpose of defrauding the

[Plaintiff]; (4) that [Plaintiff] not only relied upon the misrepresentation, but had a right to rely

upon it in the full belief of its truth, and would not have done the thing from which the injury had

resulted had not such misrepresentation been made; and (5) that [Plaintiff] actually suffered

damage directly resulting from such fraudulent misrepresentation."  *Parker*, 91 Md. App at 368-

69, 604 A.2d at 528.

The Plaintiff here has failed to satisfy not just one, but practically all of these necessary

elements.  First, the Plaintiff has failed to set forth any particular misrepresentation.  It seems his

argument revolves around the appointing of a Substitute Trustee.  The Plaintiff loosely alleges

that the appointing of a Substitute Trustee is in violation of the Deed of Trust.  Yet, the Plaintiff

overlooks the clear language of the Deed of Trust which provides:

13

**24. Substitute Trustee.**  Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed here under by an instrument recorded in the city or county in which this security Instrument is recorded.  Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

Exhibit E.  Since the substitution of trustees is expressly authorized by the loan documents, that conduct alone cannot constitute an affirmative misrepresentation.

The Plaintiff also fails to demonstrate how the appointment of a Substitute Trustee caused any injury to him.  Any claimed injury as a result of the substituting of Trustees or assigning of the loan is neither pled nor apparent.  The Plaintiff evidently made the decision to cease making his mortgage payments under the misconception that his obligations somehow were extinguished upon the secondary market assignment of his loan.  However, that is not an "injury" sufficient to satisfy the common law requirement.

Further, the Plaintiff claims that the Defendants assigned his loan and substituted the Trustee without any notice to him.  However, the Deed of Trust specifically sets forth the circumstances under which notice to the borrower is required.  The assignment/sale of the Note is not one of them.  Section 20 states that "[t]he Note … may be sold one or more time without prior notice to Borrower…".  Exhibit E.  After the sale of the Note, the Plaintiff would be notified of any new holder or servicer name and address for payment purposes.  In similar fashion, there is no notice requirement for the appointment of a Substitute Trustee.  The appointment of a Substitute Trustee must be filed with the land records.  The Defendants here filed the Deed of Appointment on July 10, 2009 in the Montgomery County land records.  *See* Exhibit F.

Finally, the Plaintiff has failed to establish any reasonable reliance.  He has not shown how he changed his position or otherwise relied to his detriment on anything the Defendants did

or failed to do.   For this reason, as well, the Plaintiff has not satisfied all the elemental requirements for a common law fraud claim and, accordingly, this Count should be dismissed.

CONCLUSION

Having failed to obtain injunctive relief or to avoid the entry of judgment in the related state foreclosure proceeding, the Plaintiff is now seeking relief in this Court.   However, this Court does not have jurisdiction to entertain the Plaintiff's claims because: (1) the requested relief is barred by the federal Anti-Injunction Act; (2) the requested relief is barred by the *Rooker-Feldman* doctrine; (3) the requested relief is barred by the doctrine of *res judicata*; and (4) the Plaintiff has failed to state a claim upon which relief can be granted in any event.   For any one of these reasons, and certainly for all four, the Motion to Dismiss should be granted.


Respectfully submitted,


_____/s/ Russell J. Pope_____
Russell J. Pope
TREANOR POPE & HUGHES
Federal Bar No. 03645
29 W. Susquehanna Avenue, Suite 110
Towson, Maryland  21204
Tel:  (410) 494-7777

*Attorneys for Defendants, HSBC Bank, USA, N.A.,*
*the Home Equity Loan Trust ACE-2005-HES,*
*Mortgage Electronic Registration Systems, Inc.,*
*Wells Fargo Bank, N.A., and*
*Buonassissi, Henning & Lash, P.C*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 21st day of October, 2010, a copy of the foregoing

Memorandum in Support of Motion to Dismiss was filed electronically and/or mailed, postage

prepaid, to:

Jose M. Blanco, Esq.
1950 Old Gallows Road, Suite 220
Vienna, VA   22182


                                        /s/ Russell J. Pope
                              Russell J. Pope